# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL EUGENE HOLLIS,<br><br>            Plaintiff,<br><br>    v.<br><br>RUSSELL YORK, et al.,<br><br>            Defendants.<br>_____/ | CASE NO. 1:09-cv-00463-OWW-YNP PC<br><br>ORDER REQUIRING PLAINTIFF EITHER TO FILE AMENDED COMPLAINT OR TO NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE<br><br>(Doc. 1)<br><br>RESPONSE DUE WITHIN 30 DAYS |

Plaintiff Michael Eugene Hollis ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff was incarcerated at Fresno County Jail at the time the events in his complaint took place. Plaintiff is suing under section 1983 for the violation of his rights under the First, Fifth, Eighth, and Fourteenth Amendments. Plaintiff names Russell York ("Director Fresno U.S. Marshal's Service"), Margaret Mims (Fresno County Sheriff), "John/Jane Doe Fresno County Jail Bureau Commander," "John/Jane Doe Head of Canteen of Fresno, Inc.," Shumate (correctional sergeant), Oliver (correctional officer), "Jane Doe Correctional Sergeant," Cartier (correctional corporal), Osborne (correctional officer), Cunha (correctional officer), and Laird (M.D., Fresno County Jail Medical Services) as defendants. For the reasons set forth below, Plaintiff will be given the opportunity to file an amended complaint, or to notify the Court of his willingness to proceed only on the claims found to be cognizable in this order.

///

I. **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

II. **Background**

Plaintiff alleges that Defendants violated his First Amendment right to free speech and to petition the government for redress of his grievances, his Fifth Amendment right not to be deprived of his property without due process of law, his Eighth Amendment right to be free from cruel and unusual punishment, and his Fourteenth Amendment rights to due process and equal protection of the laws.

///
///
///

A.     **Deficient Food Service**

On January 1, 2009, Defendant John/Jane Doe Head of Canteen of Fresno, Inc. took over the Fresno County Jail ("FCJ") canteen. (Compl. 8[1].) Plaintiff claims that the $0.88 price that the canteen charges inmates for ramen soup is "[a] shocking mark up." (Compl. 8.) Plaintiff alleges that the canteen forces inmates to spend money because they run "a most viscious[sic] monopoly." (Compl. 8.) Plaintiff alleges that the canteen has "drastically cut diets of milk, peanut butter, bread and oranges or juice." (Compl. 8.) As a result, Plaintiff has lost over 60 pounds and is also suffering from hypoglycemia. (Compl. 8.)

B.     **Medical Needs**

Plaintiff arrived at FCJ on August 19, 2008. (Compl. 9.) On August 20, 2008, Plaintiff filed a grievance because he had difficulty climbing stairs to use the toilet/shower, to access meal service or to leave the pod. (Compl. 9.) Plaintiff has difficulty climbing the stairs because he was not receiving his prescribed medication for osteo-arthritis. (Compl. 9.) Plaintiff was denied his meds from August 19, 2008 to August 23, 2008. (Compl. 9.)

On September 1, 2008, Plaintiff was called to sick call and saw registered nurse Tagoe. (Compl. 9.) Tagoe told Plaintiff that his knee was in very bad shape from climbing the stairs and recommended that the knee be examined by a qualified physician and x-rayed. (Compl. 9.) Plaintiff's knee was never examined. (Compl. 9.) Plaintiff was assigned to be housed in the medical unit, "Main Jail Second Floor, B-3". (Compl. 9.) The next day, Plaintiff was taken from the medical unit and housed back into the "North Jail Fifth Floor C-Pod". (Compl. 9.)

Plaintiff also experienced locked bowels and rectal bleeding. (Compl. 9.) Plaintiff filed a grievance regarding his locked bowels. (Compl. 9.) Plaintiff had difficulty obtaining grievance forms and could not grieve his housing issue until three days later. (Compl. 9.) Plaintiff was housed in the "North Jail Fifth Floor C-Pod" from August 19, 2008 to September 12, 2008, with the exception of the one night he spent in the medical unit. (Compl. 9.)

///

---

[1] Citations to Plaintiff's complaint refer to the actual page number as the complaint is filed, not Plaintiff's page numbering system.

1  Plaintiff alleges that he began having problems with his "digestive regularity" after he arrived
2  at FCJ. (Compl. 17.) Plaintiff purchased a laxative from the commissary because medical services
3  would not provide any. (Compl. 17.) The laxative (Metamucil) did not work and Plaintiff filed a
4  sick call request. (Compl. 17.) Plaintiff alleges that he experienced great pain and suffering because
5  his medical needs were being ignored. (Compl. 17.) Plaintiff filed numerous sick call requests that
6  were ignored by Defendant Dr. Laird. (Compl. 17.)

7  On September 4, 2008, Plaintiff attempted to buy milk of magnesia because it was
8  recommended by pill call nurses. (Compl. 18.) The medicine was out of stock at the commissary.
9  (Compl. 18.) Plaintiff continued to file sick call requests. (Compl. 18.) On September 7, 2008, an
10 unknown correctional officer took Plaintiff to the front of the pill call line and the nurse gave
11 Plaintiff four doses of milk of magnesia. (Compl. 18.) Plaintiff complains that he suffered ten days
12 of extreme distress from constipation despite the fact that he had money and was willing to pay for
13 medication. (Compl. 18.)

14  **C.   Mis-classification**

15  Plaintiff mailed a grievance to Defendant John/Jane Doe Fresno County Jail Bureau
16 Commander seeking classification and housing in the medical unit. (Compl. 10.) On September 12,
17 2008, Plaintiff was called into the classification department by Defendant Shumate and moved to
18 "Main Jail Fourth Floor 24/7 Lockdown". (Compl. 10.) Plaintiff complains that he was not allowed
19 to sign off on his grievance to let it through all three levels of the FCJ grievance process. (Compl.
20 10.) Plaintiff alleges that Defendant Shumate denied him due process in the grievance procedure.
21 (Compl. 10.) Plaintiff alleges that he was housed in disciplinary housing when he should have been
22 housed in the medical unit. (Compl. 10.)

23  **D.   Threats to Safety**

24  Plaintiff alleges that Defendant Oliver tried to house Plaintiff in 24/7 lockdown with a violent
25 murderer named FNU Royal. (Compl. 10.) However, Royal did not house with Plaintiff that day.
26 (Compl. 10.)

27  On September 28, 2008, Plaintiff was housed with another inmate in 24/7 lockdown.
28 (Compl. 11.) The other inmate had been fighting in North Jail and was housed with Plaintiff until

4

1  October 19, 2008. (Compl. 11.) Plaintiff alleges that prison officials refused to house the other
2  inmate in North Jail because he could not get along with people and therefore it was a threat to
3  Plaintiff's safety to be housed together in 24/7 lockdown. (Compl. 11.) Plaintiff filed a grievance
4  on October 2, 2008 regarding his placement. (Compl. 11.) Plaintiff could not sleep and began
5  having psychological problems. (Compl. 11.) On October 19, 2008, Plaintiff received a new
6  cellmate in 24/7 lockown. (Compl. 11.) The new cellmate was also placed in lockdown for fighting
7  in the North Jail. (Compl. 11.)

8  On December 9, 2008, Plaintiff wrote a letter to classification complaining about his fears
9  and mental problems and requested a change in his classification status. (Compl. 11.) Plaintiff was
10 denied his 90-day classification review as provided in the FCJ Inmate Handbook. (Compl. 11.)
11 Plaintiff alleges that he was denied his 90-day classification review in retaliation for filing
12 grievances. (Compl. 11.)

13 On February 2, 2009, Defendant Oliver placed a "court-certified criminally insane and self-
14 admitted dangerous untreated psych patient in 24/7 Lockdown with Plaintiff". (Compl. 11.)

15 **E.     Harassment/Retaliation**

16 Plaintiff alleges that some time around January 8, 2009, Plaintiff was denied legal mail
17 service for a weekend and Defendants Jane Doe sergeant, Cartier, Osborne, and Cunha denied
18 Plaintiff legal materials. (Compl. 13.) Plaintiff was attempting to file a motion that eventually got
19 filed on January 15, 2009. (Compl. 13.)

20 On January 13, 2009, Plaintiff filed a grievance because officers were preventing Plaintiff
21 from filing grievances. (Compl. 13.) The grievance was "refused" by Defendant Cunha. (Compl.
22 13.) On January 24, 2009, Plaintiff attempted to write a letter to the Fresno County Sheriff Internal
23 Affairs Division regarding his difficulties in filing grievances. (Compl. 13.) Plaintiff was attempting
24 to file a grievance regarding the money inmates have to spend on commissary purchases. (Compl.
25 14.) On January 27, 2009, Plaintiff asked Defendant Cartier for a grievance form. (Compl. 14.)
26 Plaintiff's request was ignored. (Compl. 14.) On January 31, 2009, Plaintiff sent an inmate request
27 to Defendant Jane Doe Correctional Sergeant, requesting to speak to her about the due process,
28 harassment, and retaliation issues. (Compl. 14.) Plaintiff's request was ignored. (Compl. 14.)

On February 8, 2009, Defendants Osborne and Cunha came to Plaintiff's cell and returned a refused grievance that they had confiscated for two days. (Compl. 14.) Plaintiff's grievance dealt with a personal safety issue. (Compl. 14.) Defendants Osborne and Cunha then began talking about how Plaintiff was "kiting out" his cellmate (snitching) in front of Plaintiff's cellmate, attempting to provoke Plaintiff's cellmate into attacking him. (Compl. 14-15.) Plaintiff was not attacked by his cellmate because his cellmate was apparently clueless about what was going on. (Compl. 15.)

On February 10, 2009, Defendants Osborne and Cunha turned the power off long enough to reset the power to the water heater. (Compl. 15.) As a result, Plaintiff was forced to take a cold shower. (Compl. 15.) Plaintiff also complained about an incident where Defendants Osborne and Cunha trashed Plaintiff's cell and confiscated some of his property. (Compl. 15-16.) Afterwards, Plaintiff was written up for having a toothpick. (Compl. 16.) Plaintiff also complained about Defendants "mad-dogging"[2] Plaintiff whenever Plaintiff left his cell. (Compl. 16.)

### F. Dental Care

Plaintiff alleges that Defendant York, Mims, and John/Jane Doe Fresno County Jail Bureau Commander are keeping inmates at FCJ in custody with substandard dental hygiene supplies and deficient dental care. (Compl. 20.) Plaintiff complains that he is forced to brush his teeth with a toothbrush manufactured for use on dogs. (Compl. 20.) Plaintiff complains that he nearly choked on the small toothbrush, that it cannot reach all his teeth for cleaning, and that Defendants prevent inmates from modifying the toothbrush to be more practical. (Compl. 20.) Plaintiff was also denied dental floss. (Compl. 20.)

### G. Denial of Correspondence

Plaintiff alleges that jail staff are denying inmates sharpeners for their pencils and pencils are the only authorized writing tool at FCJ. (Compl. 21.) Pencil sharpeners were out of stock at the commissary from September 30, 2008 to November 18, 2008. (Compl. 21.)

///

---

[2]The court notes that "mad dogging" is a form of psychological intimidation effected by staring at an individual with a hostile glare for a prolonged period of time -- the term being derived from the canine practice of staring down a rival until the rival either submits by looking away, or escalates the standoff by baring teeth, barking, and ultimately attacking his counterpart.

6

### III. Discussion

#### A. First Amendment Claims

##### 1. Retaliation Claims

Plaintiff claims that Defendants retaliated against him for filing prison grievances. In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). Although Plaintiff does not specifically allege a chilling effect, the Ninth Circuit has suggested that alleging harm is sufficient "since harm that is more than minimal will almost always have a chilling effect." Rhodes v. Robinson, 408 F.3d 559, 568 n.11 (9th Cir. 2005).

Defendants Osborne and Cunha attempted to provoke Plaintiff's cellmate to attack Plaintiff in response to grievances that Plaintiff had filed. Plaintiff also alleges that Defendants Osborne and Cunha forced Plaintiff to take cold showers and confiscated, destroyed Plaintiff's property and "mad-dogged" Plaintiff whenever he left his cell. Defendants Shumate and Oliver housed Plaintiff in lockdown with dangerous cellmates in response to Plaintiff's grievances about his housing situation and medical care. Plaintiff states cognizable claims against Defendants Osborne, Cunha, Shumate, and Oliver for retaliation against the exercise of his First Amendment rights.

##### 2. Free Speech Claims

Plaintiff claims that Defendants violated his First Amendment rights because Plaintiff was unable to purchase a pencil sharpener for one-and-a-half months. "[A] prisoner inmate retains those First Amendment rights that are not inconsistent with his [or her] status as a prisoner or with the

legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). A regulation that impinges on First Amendment rights "is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam).

Plaintiff frames his First Amendment claim around his inability to purchase a pencil sharpener from September 30, 2008 to November 18, 2008. However, the First Amendment does not guarantee the right to a pencil sharpener. The First Amendment guarantees a right to send and receive mail, subject to the limitation of prison regulations that are reasonably related to legitimate penological interests. Access to a pencil sharpener is merely one acceptable method of exercising that right. To state a claim under the First Amendment, Plaintiff must frame his claim around his inability to exercise his right to send and receive mail. Plaintiff has not provided allegations that describe specific instances where he was prevented from sending or receiving mail. Plaintiff fails to state a cognizable claim for interference with his First Amendment right to send and receive mail.

### B. Fifth Amendment - Property Claims

Plaintiff claims that Defendants violated his Fifth Amendment due process rights when his cell was ransacked and Plaintiff's property was confiscated. The Fifth Amendment's Due Process Clause only applies to the federal government. Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008). Defendants are local correctional officers and Plaintiff's due process claim is more appropriately brought under the Fourteenth Amendment's Due Process Clause, which prohibits deprivations without due process by state actors. Betts v. Brady, 316 U.S. 455, 462 (1942) ("Due process of law is secured against invasion by the federal Government by the Fifth Amendment and is safeguarded against state action in identical words by the Fourteenth"), overruled on other grounds by Gideon v. Wainwright, 372 U.S. 335 (1963). Plaintiff's property claims will be analyzed under the Fourteenth Amendment. See discussion infra Part III.D.1.

///

///

///

C. **Eighth Amendment Claims**[3]

Plaintiff claims that his rights under the Eighth Amendment were violated by Defendants. The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious", Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991), and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind", Id. (quoting Wilson, 501 U.S. at 298). The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities". Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he/she "knows of and disregards an excessive risk to inmate health or safety". Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

1. **Deliberate Indifference to Threats to Safety**

Plaintiff claims that Defendants endangered his safety by housing him with dangerous inmates. "Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). To demonstrate that a

---

[3] It is not clear whether Plaintiff was a convicted prisoner or was a pre-trial detainee awaiting his criminal trial when the events in his complaint took place. Although the Eighth Amendment's prohibition against cruel and unusual punishment only protects convicted prisoners, Bell v. Wolfish, 441 U.S. 520, 535 (1979); Graham v. Connor, 490 U.S. 386, 395 n.10 (1989), the rights of pre-trial detainees under the Due Process Clause are analyzed using the same standards as the rights of convicted prisoners under the Eighth Amendment, Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837.

Plaintiff alleges that Defendants Shumate and Oliver housed Plaintiff with dangerous inmates that threatened Plaintiff's safety. Defendants Shumate and Oliver knew that Plaintiff's cellmates posed a danger to Plaintiff and the decision to house them together was made intentionally in retaliation for the grievances Plaintiff filed. Plaintiff alleges that Defendants Osborne and Cunha intentionally attempted to provoke Plaintiff's cellmate into attacking Plaintiff. Plaintiff states a cognizable claim against Defendants Shumate, Oliver, Osborne, and Cunha for deliberate indifference to a serious threat to Plaintiff's safety.

### 2. Deliberate Indifference to Medical Needs

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs. "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 105 (1976). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (quoting Estelle, 429 U.S. at 104). Delay of medical treatment can amount to deliberate indifference. See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); McGuckin, 974 F.2d at 1059; Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Isolated occurrences of neglect do not constitute deliberate indifference to serious

///

medical needs. See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992); O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990).

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs by failing to provide over-the-counter medication for his constipation. Plaintiff alleges that he experienced great pain and suffering from his constipation. Plaintiff alleges that he filed numerous sick call requests about his "locked bowels and rectal bleeding" that were denied by Defendant Laird. Plaintiff was only given medication for his constipation once, when an unidentified correctional officer intervened and helped Plaintiff get four doses of milk of magnesia. Plaintiff otherwise had no access to medication for his constipation. Plaintiff states a cognizable claim against Defendant Laird for deliberate indifference to his medical needs.

Plaintiff also alleges that Defendants were deliberately indifferent to his serious medical needs by housing him in 24/7 lockdown, where he had to climb stairs that exacerbated his knee injury. Further, Defendants did not provide Plaintiff with his osteo-arthritis medication. Plaintiff alleges that he filed a grievance regarding the situation but it was denied by John/Jane Doe Fresno County Jail Bureau Commander. Plaintiff alleges that he was placed in lockdown by Defendant Shumate, despite Defendant Shumate's awareness of Plaintiff's grievance. Thus, Defendants John/Jane Doe Fresno County Jail Bureau Commander and Shumate were aware of Plaintiff's knee problems and housed him in lockdown after they were made aware that Plaintiff's knee problems were worsening. Plaintiff states a cognizable claim against Defendants John/Jane Doe Fresno County Jail Bureau Commander and Shumate for deliberate indifference to his medical needs.

### 3. Substandard Dental Hygiene Products

Plaintiff alleges that the conditions of his confinement violated the Eighth Amendment because he was given substandard dental hygiene products and insufficient food. Lack of proper dental hygiene products may be sufficient to state a claim under the Eighth Amendment where the deprivation of proper dental hygiene poses a threat to Plaintiff's safety. However, Plaintiff has not provided allegations that show Defendants were "deliberately indifferent". Plaintiff alleges that York, Mims, and John/Jane Doe Fresno County Jail Bureau Commander are liable "as officials who knew or should have known that running a facility housing thousands of men and women with

obviously faulty dental hygiene and very slow to no dental care would cause wholesale misery and suffering to a large percentage of those men and women." (Compl. 20.) Alleging that Defendants "knew or should have known" is not sufficient to establish deliberate indifference. In order to state a cognizable claim under the Eighth Amendment, Plaintiff must demonstrate that Defendants had actual knowledge (either through a grievance Plaintiff filed that was denied by them, or otherwise) that the dental hygiene products provided by FCJ were substandard and posed a risk of serious harm to inmates. Plaintiff fails to state a cognizable claim against Defendants York, Mims, and John/Jane Doe Fresno County Jail Bureau Commander for the substandard dental hygiene products at FCJ.

To the extent that Plaintiff is attempting to hold John/Jane Doe Head of Canteen of Fresno Inc. liable for charging inmates a dollar for the substandard dental products, Plaintiff fails to state a claim. Plaintiff has not alleged facts that suggest that the manager of the canteen/commissary at FCJ has a duty to provide dental hygiene products to inmates or that the canteen/commissary has a duty to sell dental hygiene products at prices Plaintiff finds reasonable. Plaintiff fails to state a claim against John/Jane Doe Head of Canteen of Fresno Inc.

### 4. **Insufficient Food**

Plaintiff alleges that he has been provided with insufficient food and is suffering from hypoglycemia. Prison officials have a duty to provide inmates with enough food to maintain health. LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993).

Plaintiff's allegations against John/Jane Doe Head of Canteen of Fresno, Inc. are unclear. Plaintiff complains that the canteen/commissary charges inmates $0.88 for ramen soup. Plaintiff does not have a constitutional right to tasty or aesthetically pleasing food. Id. Plaintiff does not have a constitutional right to ramen soup at an affordable price. Therefore, to the extent that Plaintiff is complaining that his regular meals are not tasty and the canteen/commissary charges too much for tasty food, Plaintiff fails to state a claim.

Plaintiff may state a claim under the Eighth Amendment if he is not receiving sufficient food from his regular meals. However, it is not clear if John/Jane Doe Head of Canteen of Fresno, Inc. is responsible for providing Plaintiff's regular meals. If Plaintiff is receiving insufficient food from his regular meals, he may state a claim under the Eighth Amendment against the prison officials who

were aware of the problem and failed to remedy it. Plaintiff has not alleged that Defendants York, Mims, and John/Jane Doe Fresno County Jail Bureau Commander, or John/Jane Doe Head of Canteen of Fresno Inc. acted with deliberate indifference by having knowledge of the insufficient food service and failing to remedy the problem. Therefore, Plaintiff fails to state a cognizable claim against Defendants York, Mims, John/Jane Doe Fresno County Jail Bureau Commander, and John/Jane Doe Head of Canteen of Fresno Inc. for the food at FCJ.

### D. Fourteenth Amendment Claims

#### 1. Due Process

Plaintiff claims Defendants violated his rights under the Due Process Clause. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

##### i. Prison Grievance Procedure

Plaintiff claims that he had limited access to the grievance system and the grievances he did file were ignored. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing prisoner's grievance (or in refusing to review a prisoner's grievance) cannot serve as the basis for liability under

a § 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) citing Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir.1996).

Ignoring a prisoner's grievance is not in itself a constitutional violation. Access to a prison grievance system is not an atypical and significant hardship. Thus, Plaintiff does not have a protected liberty interest in access to the prison grievance system and prison officials do not violate the Due Process Clause by ignoring grievances or by failing to provide prisoners with grievance forms. Prison grievances may put prison officials on notice of a constitutional violation, thus making them liable if they fail to correct an on-going constitutional violation. See discussion supra Part III.C.2 (Defendant Laird may be held liable where sick call request/grievance put him on notice of lack of medical treatment and Defendant Laird failed to correct the issue). However, Plaintiff has no substantive right under the Due Process Clause to access to the prison grievance system. Plaintiff fails to state a cognizable claim under the Due Process Clause for the manner in which his grievances were handled.

### ii. Property

Plaintiff claims that he was deprived of his property with due process. The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir.1974). Whether a deprivation of property rises to the level of a constitutional violation depends on whether the deprivation was negligent or unauthorized. A negligent deprivation of property does not violate the Due Process Clause when adequate post-deprivation remedies are available because pre-deprivation process is impracticable since the state cannot know when such deprivations will occur. Hudson v. Palmer, 468 U.S. 517,

533 (1984). Similarly, an intentional, but unauthorized, deprivation of property does not violate the Due Process Clause when adequate post-deprivation remedies are available. Id. California Law provides an adequate post-deprivation remedy for any unauthorized property deprivations. Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).

Plaintiff describes an incident where Defendants Osborne and Cunha trashed Plaintiff's cell and took Plaintiff's personal crossword puzzle selection and commissary items. Plaintiff characterizes the incident as harassment or retaliation. The intentional deprivation of Plaintiff's property does not rise to the level of a constitutional claim that may be brought under section 1983. Plaintiff must utilize state law procedures to remedy the intentional deprivation of his property. Plaintiff fails to state a cognizable claim under the Due Process Clause for the deprivation of his property.

### iii.   Classification

Plaintiff claims he was denied due process in his classification hearing and ended up being mis-classified and housed in lockdown instead of the medical unit. Plaintiff does not have a protected liberty interest in a particular classification while in prison. Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). Therefore, Plaintiff does not have a sufficient entitlement to his classification to invoke due process rights at a classification hearing. Plaintiff fails to state a cognizable claim under the Due Process Clause for his mis-classification.[4]

### 2.   Access to the Courts

Plaintiff claims that Defendants interfered with his access to the courts. Prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures); Vandelft v. Moses, 31 F.3d 794, 796 (9th Cir. 1994); Ching v. Lewis, 895 F.2d 608, 609 (9th Cir. 1989) (per curiam). To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived.

---

[4] Housing Plaintiff in a section of the prison that exacerbates his knee injury may violate Plaintiff's rights under the Eighth Amendment. See discussion supra Part III.C.2.

15

See Lewis, 518 U.S. at 349. An "actual injury" is "'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'" Id. at 348.

Plaintiff alleges that his right of access to the courts was denied because Defendants did not provide Plaintiff with grievance forms. Plaintiff argues that if prison officials do not provide grievance forms to Plaintiff, Plaintiff cannot file grievances regarding alleged constitutional violations in the prison. If Plaintiff cannot file grievances, he cannot exhaust his administrative remedies for the claims he wishes to bring to court.[5] Thus, Plaintiff argues that Defendants are interfering with his access to the courts by not providing him with grievance forms. However, Plaintiff may not bring suit for interference with his right of access to the courts until he has suffered "actual injury" – such as by showing that his lawsuit was dismissed for failure to exhaust his administrative remedies. Because Plaintiff has not yet suffered "actual injury" with respect to his access to the courts claims, Plaintiff does not yet state a cognizable claim.

### 3. Equal Protection

Plaintiff claims that Defendants deprived him of equal protection of the laws. The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). A plaintiff may establish an equal protection claim by showing that the plaintiff was intentionally discriminated against on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir.2005).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972);

---

[5] The Prison Litigation Reform Act requires inmates to exhaust available administrative remedies before filing suit: "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

16

Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir.2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564.

It is not clear what the basis of Plaintiff's equal protection claim is. Plaintiff does not allege he was discriminated against on account of his race, nor does he allege discrimination on account of his membership in any other identifiable class. As such, Plaintiff fails to state a cognizable claim for violation of the Equal Protection Clause.

### E.     Plaintiff's Reference to Class Action

Plaintiff purports to bring his lawsuit "[o]n behalf of the Eighth Amendment rights of the thousands of men and women in FCJ." (Compl. 21.) Plaintiff also indicates that he is seeking relief "pursuant to a [c]lass [a]ction [l]awsuit on behalf of the past, present, and future FJC [i]nmates." (Compl. 21.) Plaintiff, however, is a non-lawyer proceeding without counsel. It is well established that a layperson cannot ordinarily represent the interests of a class. See McShane v. United States, 366 F.2d 286 (9th Cir. 1966). This rule becomes almost absolute when, as here, the putative class representative is incarcerated and proceeding pro se. Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975). In direct terms, plaintiff cannot "fairly and adequately protect the interests of the class" as required by Fed. R. Civ. P. 23(a)(4). See Martin v. Middendorf, 420 F. Supp. 779 (D.D.C. 1976). This action, therefore, will not be construed as a class action and instead will be construed as an individual civil suit brought by Plaintiff.

## IV.    Conclusion and Order

Plaintiff's complaint states cognizable claims against Defendants Osborne, Cunha, Shumate, and Oliver for retaliation against the exercise of Plaintiff's First Amendment rights and deliberate indifference to a threat to Plaintiff's safety in violation of the Eighth Amendment. Plaintiff's complaint also states cognizable claims against Defendants Laird, John/Jane Doe Fresno County Jail Bureau Commander and Shumate for deliberate indifference to Plaintiff's medical needs in violation of the Eighth Amendment. Plaintiff's complaint fails to state claims against any other defendants.

The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and defendants, and will forward Plaintiff five (5) summonses and five (5) USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567

(9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

   a. File an amended complaint curing the deficiencies identified by the Court in this order, or

   b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Osborne, Cunha, Shumate, Oliver, Laird, and John/Jane Doe Fresno County Jail Bureau Commander; and

3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   October 8, 2009           /s/ Gary S. Austin
                                   UNITED STATES MAGISTRATE JUDGE