1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  | MICHAEL EUGENE HOLLIS,

CASE NO. 1:09-cv-00463-OWW-SKO PC

10        Plaintiff,

FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND SEVERANCE OF PLAINTIFF'S COGNIZABLE CLAIMS

11  | v.

12  | RUSSELL YORK, et al.,

(Doc. 25)

13        Defendants.
_____/

14

15      Plaintiff Michael Eugene Hollis ("Plaintiff") is a state prisoner proceeding pro se and in

16  forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is in the custody of

17  the California Department of Corrections and Rehabilitation ("CDCR") and is currently incarcerated

18  in the Lerdo Max/Med Detention Facility ("Lerdo") in Bakersfield, California.  However, the events

19  described in Plaintiff's complaint took place while Plaintiff was incarcerated at Fresno County Jail

20  ("FCJ") in Fresno, California.  Plaintiff names Margaret Mims (Fresno County Sheriff), John/Jane

21  Doe Jail Commander (detention bureau commander), Dr. Laird (jail medical administrator), Shumate

22  (classification sergeant), Blathers (correctional sergeant), Nichols (correctional corporal), Cartier

23  (correctional corporal), Osborne (correctional officer), Oliver (classification officer), Cunha

24  (correctional officer), Dawson (correctional corporal), Calvert (correctional officer), "Unknown

25  Conspirator" (correctional officer), "Unknown Medical Doctor (jail medical services doctor), and

26  "Unidentified Supervisor" (maintenance supervisor) as defendants.  For the reasons set forth below,

27  the Court finds that Plaintiff's first amended complaint states some cognizable claims.  The Court

28  also finds that Plaintiff's claims are not properly joined and will recommend that they be severed.

## I.   Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

## II.   Background

### A.   Procedural Background

Plaintiff filed the original complaint in this action on March 11, 2009. (Doc. #1.) Plaintiff's original complaint was screened by the Court pursuant to 28 U.S.C. § 1915A(a) on October 8, 2009. (Doc. #20.) The Court found that Plaintiff's original complaint stated some cognizable claims and

found that the other claims failed to state a cognizable claim for relief.  The Court ordered Plaintiff to either file an amended complaint that cured the deficiencies in his non-cognizable claims or notify the Court that he wished to proceed only on the claims found to be cognizable.  On January 19, 2010, Plaintiff filed his first amended complaint.  (Doc. #25.)  This action proceeds on Plaintiff's first amended complaint.

### B.    Factual Background

Plaintiff divides his complaint into seven separate "claims": 1) "Denial of Meaningful Access to Federal Court," 2) "Denial of a Common Over-the-Counter (OTC) Remedy," 3) "Correctional Officer Harassment/Retaliation," 4) "Retaliatory Abuse of the Disciplinary Process," 5) "Mis-Classification," 6) "Unconstitutionally Cold Jail Temperatures," and 7) "Denial of Adequate Lighting."

### 1.    Denial of Meaningful Access to Federal Court

Plaintiff's "Denial of Meaningful Access to Federal Court" claim names Margaret Mims and John/Jane Doe Jail Commander as defendants.  Plaintiff claims that the law library policy at FCJ violated Plaintiff's constitutional right of access to the courts.

Plaintiff's access to courts claim is premised on his "unavoidably substandard" filings in this Court.  (Am. Compl. 12, ECF No. 25.[1])  Plaintiff claims that his filings are substandard because he did not have adequate access to law library resources at FCJ.  Plaintiff also complains that he is now incarcerated in Big Spring, Texas, and is unable to litigate his California state law claims because he does not have access to California state law resources.[2]

Plaintiff complains that while at FCJ, he was not allowed to visit the law library and was not allowed to possess hard bound books.  Instead, Plaintiff was classified as an "Intensive Management Unit" inmate and was supposed to be able to obtain copies of specifically requested materials and provided with an index to help him request materials.  (Am. Compl. 14, ECF No. 25.)  Plaintiff also

---

[1]Citations to Plaintiff's complaint refer to the page numbers as the complaint is electronically docketed. The page numbers used by Plaintiff do not align with the page numbers as the pleading is docketed.

[2]Plaintiff was incarcerated in Texas at the time he filed his amended complaint.  According to the docket, Plaintiff has since been transferred to Bakersfield, California.

claims that he should have received weekly assistance from inmate law clerks.  Plaintiff complains that he did not receive any of those services.  Plaintiff does not specifically allege what services he did receive, but concludes that the services provided at FCJ were constitutionally inadequate because "[i]t is clear . . . that none of the requisites of Ninth Circuit constitutionally adequate law library access are met by Defendant Mims and her John/Jane Doe Jail Commander's unconstitutional institutional policy of denying civil rights litigants in FCJ access to FCJ legal resources."  (Am. Compl. 15, ECF No. 25.)

Plaintiff's access to courts claim also cites the legal standards for stating a claim for retaliation against a prisoner's exercise of a protected First Amendment right.  Plaintiff claims that Mims and John/Jane Doe Jail Commander "have bad faith, retaliatory motives for denying the pursuit of all civil rights damages claims in the FCJ law library."  (Am. Compl. 23, ECF No. 25.) Plaintiff claims that the unconstitutional law library access policy is an attempt to save costs from litigating lawsuits.

### 2.   Denial of a Common Over-the-Counter (OTC) Remedy

Plaintiff's "Denial of a Common Over-the-Counter (OTC) Remedy" claim names Margaret Mims, John/Jane Doe Jail Commander, and Laird as defendants.  Plaintiff also indicates that he wishes to amend his complaint at a later date to state claims against unidentified FCJ medical services officials.

Plaintiff alleges that he arrived at FCJ on August 19, 2008 with "very bad problems with his digestive irregularity."  (Am. Compl. 25, ECF No. 25.)  On August 28, 2008, Plaintiff bought an over-the-counter laxative for his medical problem.  On August 29, 2008, Plaintiff filed a sick call request because he was experiencing rectal pain and bleeding.  Plaintiff claims that his medical problems were related to surgery he received in 2004 to remove an "anal fistula."  (Am. Compl. 25, ECF No. 25.)

Plaintiff continued to file sick call requests on a daily basis.  On September 4, 2008, Plaintiff filed a grievance about his medical problems.  The grievance was denied on September 8, 2008.

On September 4, 2008, Plaintiff attempted to buy milk of magnesia from the commissary. However, the milk of magnesia was out of stock and Plaintiff began complaining to nurses that he

was denied a common over-the-counter medication.  Plaintiff continued to suffer "sharp cramps, bloating, rectal bleeding, and loss of sleep in his extreme discomfort."  (Am. Compl. 27, ECF No. 25.)  On September 7, 2008, an unknown correctional officer took Plaintiff to the front of the sick call line and told the nurse that Plaintiff had not had a bowel movement in ten days.  The nurse gave Plaintiff four doses of milk of magnesia and warm water.  Plaintiff was then sent back to his housing unit "where relief from his very distressing condition followed shortly thereafter."  (Am. Compl. 29, ECF No. 25.)

Plaintiff complains that Defendant Laird dismissed Plaintiff's administrative grievances requesting medical care because Plaintiff's condition was "mere constipation."  (Am. Compl. 29, ECF No. 25.)

### 3.    Correctional Officer Harassment/Retaliation

Plaintiff's "Correctional Officer Harassment/Retaliation" claim names Blathers, Cartier, Cunha, and Osborne as defendants.

Plaintiff claims that Defendants Cartier, Osborne, and Cunha denied Plaintiff's requests for legal materials and legal services.  Plaintiff requested grievance forms and postage materials but the officers refused to provide Plaintiff with those materials.  Plaintiff claims that the officers denied Plaintiff's requests in retaliation for Plaintiff's litigious behavior.  Plaintiff also complains that the officers were slow to respond to grievances and denied the grievances when they finally addressed them.  Plaintiff claims that his access to the FCJ grievance process was denied on five occasions by these officers.

Plaintiff claims that on February 8, 2009, he filed a grievance complaining that he feared for his safety because he was housed with "a court-certified criminally insane madman in 24/7 punitive medical lockdown."  (Am. Compl. 42, ECF No. 25.)  Instead of addressing Plaintiff's grievance, Defendants Cunha and Osborne "started talking with the violent man standing right there" and "[i]t was obvious to anyone that these Defendants were placing Plaintiff in danger."  (Am. Compl. 42-43, ECF No. 25.)  Plaintiff claims that Defendants were "kiting him out," meaning that they were attempting to label Plaintiff as a snitch so the "criminally insane" cell mate would attack him.

///

Plaintiff attempts to hold Defendant Blathers liable for the alleged harassment Plaintiff experienced at the hands of other officers.  Plaintiff alleges that Blathers is a supervisory official who ignored Plaintiff's written requests to talk to her about staff misconduct.

### 4.   Retaliatory Abuse of the Disciplinary Process

Plaintiff's "Retaliatory Abuse of the Disciplinary Process" claim names Blathers, Nichols, Cartier, Cunha, and Osborne as defendants.  Plaintiff also alleges that an unidentified classification officer is also liable for disciplining Plaintiff.

On February 15, 2009, Cartier sent Osborne and Cunha to trash Plaintiff's cell.  While they were trashing Plaintiff's cell, they found a toothpick that Plaintiff had made.  Plaintiff contends that he was forced to make the toothpick because the commissary does not sell dental floss.  The toothpick was made from a staple and a pencil.  Cunha served Plaintiff with a "serious major offense" for possessing a weapon.

On February 17, 2009, Plaintiff attended a disciplinary hearing conducted by Defendant Nichols.  Plaintiff admitted to the facts of the case.  Nichols stated that he did not consider the case to be a "serious major offense," but found Plaintiff guilty of a minor offense.  Plaintiff agreed with Nichols' findings but nonetheless contends that Nichols violated Plaintiff's due process rights by failing to provide Plaintiff with a paper copy of the findings and punishment imposed for the offense.

On February 23, 2009, Plaintiff was scheduled for a court appearance.  Plaintiff contends that as he was walking out, Osborne, Cunha and Blathers gave Plaintiff dirty looks.  Osborne verbally noted that Plaintiff was "off to see Judge Wanger" in a mocking manner.  When Plaintiff returned from court, his housing unit was trashed.  Cartier then informed Plaintiff that he was moving. Plaintiff complains that Cartier repeatedly rushed Plaintiff as he was cleaning up his trashed property in preparation for the move.  Plaintiff claims that Blathers conspired with the other Defendants to move Plaintiff to disciplinary housing because Blathers thought that Plaintiff had told Judge Wanger about civil rights violations against her staff when Plaintiff had appeared in Court.  Plaintiff contends that Blathers' actions were adverse because he was moved to the coldest floor in FCJ.

///

///

6

5.   **Mis-Classification**

Plaintiff's "Mis-Classification" claim names Shumate and Oliver as defendants.

Plaintiff alleges that he filed a grievance on August 20, 2008 complaining that he was forced to climb stairs to use the restroom, shower, eat meals, access mail service, or leave the housing area. Plaintiff claims that he suffers from post-surgical osteoarthritis and was not given access to his medication. As a result, Plaintiff suffered pain from being forced to climb the stairs.

On September 1, 2008, Plaintiff was seen by a registered nurse who recommended that Plaintiff be seen by a physician because his right knee was swollen. Plaintiff was never examined by a physician. On September 2, 2008, Defendant Shumate moved Plaintiff to the fifth floor of the jail, despite the fact that Plaintiff's knee had swollen to twice its normal size. Plaintiff contends that the "Classification Defendants"[3] moved Plaintiff to the Fifth floor in retaliation for filing a grievance about his knee problems.

Plaintiff also complains that he was suffering from locked bowels and rectal bleeding during that period. Plaintiff was unable to file a grievance about his medical issues because correctional officers would not provide Plaintiff with the necessary paperwork. When Plaintiff received the necessary paperwork, he filed a grievance and sent it to John/Jane Doe Jail Commander. On September 12, 2008, Plaintiff was called into the classification office by Shumate. Shumate was visibly irate. Plaintiff was then moved to the fourth floor. Plaintiff complains that he was not allowed to sign off on his grievance.

On September 12, 2008, Defendant Oliver attempted to house Plaintiff in a medical lockdown cell with a violent murderer. Although Plaintiff was not housed with the violent murderer, Plaintiff complains that the attempt demonstrates that Defendants "were clearly moving swiftly to get some violence into the Disabled American Plaintiff's life." (Am. Compl. 66, ECF No. 25.) On September 28, 2008, Defendant Shumate housed Plaintiff in a medical lockdown cell with an inmate that had been fighting "in the North Jail." (Am. Compl. 66, ECF No. 25.) Plaintiff alleges that Shumate knew that the inmate did not get along with others because Shumate denied the inmate's

---

[3]The identity of the "Classification Defendants" is unclear as Plaintiff only specifically identifies Defendant Shumate in this portion of Plaintiff's complaint.

request to return to North Jail on those grounds.  Plaintiff claims that he was "walking on eggshells" because he was forced to remain in lockdown with the violent inmate and he was disabled and unable to defend himself.

On October 19, 2008, Plaintiff was housed with a new cell mate that also had violent tendencies.  On December 9, 2008, Plaintiff wrote a letter to Shumate complaining about being housed with gang members and requested to be reclassified.  Plaintiff's request was denied on December 12, 2008.  Plaintiff claims that the FCJ inmate handbook bestows upon Plaintiff a right to a classification review.  Plaintiff contends that his right to a classification review was denied when his requests were denied.  Plaintiff was then housed with another violent inmate on February 2, 2009.  Plaintiff contends that Defendant Oliver deliberately placed the violent inmate in Plaintiff's cell to show Plaintiff what "real jail" looked like.

### 6.    Unconstitutionally Cold Jail Temperatures

Plaintiff's "Unconstitutionally Cold Jail Temperatures" claim names Margaret Mims, John/Jane Doe Jail Commander, Blathers, Dawson, and Calvert as defendants.

Plaintiff claims that Defendant Mims is "pip[ing] in" cold air from outside into the jail through the air vents.  (Am. Compl. 72, ECF No. 25.)  Plaintiff filed grievances about the cold temperatures and requested extra clothing.  Plaintiff contends that Mims and John/Jane Doe Jail Commander refused to issue  inmates long underwear or beanies.  Plaintiff spoke with a correctional corporal who told Plaintiff that he had to make his request for extra clothing through medical.  Plaintiff contends that medical personnel told Plaintiff to request extra clothing through custody.  Plaintiff complains that he was getting a runaround.

On November 29, 2008, Plaintiff filed a grievance requesting extra clothing that was denied by John/Jane Doe Jail Commander on December 12, 2008.  Plaintiff contends that the cold temperatures aggravated his severe osteoarthritis and that he noted these issues in his grievances.

On December 2, 2008, Plaintiff was interviewed by Defendants Dawson and Calvert about his grievances.  Calvert spoke to Plaintiff about the maintenance issues in FCJ and acknowledged a number of other grievances about the cold temperatures filed by other inmates.  Calvert asked

///

1    Plaintiff to sign off on the grievance and told Plaintiff that the issue would be resolved soon.

2    Plaintiff complained that it was so cold that both Dawson and Calvert were wearing coats.

3    Plaintiff also alleges that Dawson and Calvert took a temperature reading of the jail but

4    falsified the results.  Plaintiff contends that the ambient temperature in his cell was in the low 50s

5    but Dawson and Calvert took a false reading by measuring the temperature in the warmest area of

6    the jail to record a temperature that appeared to be acceptable (64 degrees).

7                    **7.    Denial of Adequate Lighting**

8    Plaintiff's "Denial of Adequate Lighting" claim names Margaret Mims and John/Jane Doe

9    Jail Commander as defendants.  Plaintiff also claims that an unknown maintenance supervisor is also

10   liable for the inadequate lighting.

11   Plaintiff alleges that he was housed in a cell with inadequate lighting from March 23, 2009

12   to May 7, 2009.  Plaintiff claims that the light in his cell was stuck on the "dim" setting because it

13   was damaged.  Plaintiff claims that the light was so dim that it was difficult to see or read from

14   Plaintiff's bunk.  Plaintiff filed numerous administrative grievances complaining about the lighting

15   and spoke with a number of correctional officers about the issue.  Plaintiff claims that the unknown

16   maintenance supervisor sent workers to fix the light on multiple occasions, but they did not fix the

17   light.  Plaintiff's light was not fixed until May 7, 2009.  Plaintiff complains that there was not

18   enough light to read while Plaintiff was on his bunk.  However, Plaintiff admits that the desk in his

19   cell was directly under the dim light and received enough light to read.  Plaintiff alleges that he had

20   to constantly argue with his cellmate over who could use the desk area to read.

21   **III.    Discussion**

22            **A.    Denial of Meaningful Access to Federal Court**

23                    **1.    Access to Courts Claims**

24   Plaintiff claims that the law library policies at FCJ violated his constitutional right of access

25   to the courts.  Prisoners have a constitutional right of access to the courts.  See Lewis v. Casey, 518

26   U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276,

27   1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures); Vandelft

28   v. Moses, 31 F.3d 794, 796 (9th Cir. 1994); Ching v. Lewis, 895 F.2d 608, 609 (9th Cir. 1989) (per

curiam).  To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived.  See Lewis, 518 U.S. at 349.  An "actual injury" is "'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'"  Id. at 348.

Prisoners do not have a right to a law library.  Lewis, 518 U.S. at 350.  Prisoners have a right of access to the courts and a law library is "merely 'one constitutionally acceptable method to assure meaningful access to the courts.'"  Lewis, 518 U.S. at 351 (quoting Bounds, 430 U.S. at 830)).  "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."  Id.  Thus, an allegation that a prisoner was denied access to the law library is not sufficient to state a claim for interference with access to the courts.  An access-to-courts claim centers around the actual injury a prisoner suffered with respect to contemplated or existing litigation, and not on the fact that the prisoner was denied time in the law library, or was removed from the law library prematurely.

The right of access to the courts does not require the State to enable prisoners to discover grievances and litigate effectively once in court.  Id. at 354.  Further, the right of access to the courts only pertains to attempts by inmates to pursue direct appeals from the convictions for which they were incarcerated such as habeas petitions and civil rights actions.  Id.

When raising an access to courts claim seeking relief for a lost opportunity to present a legal claim or relief from an unfavorable outcome in a prior legal claim, a plaintiff must show 1) the loss of a non frivolous or arguable claim; 2) the defendant's acts frustrating the litigation; and 3) that the relief sought is unobtainable in any presently existing suit.  Christopher v. Harbury, 536 U.S. 403, 413-416 (2002).

Plaintiff has not alleged that he suffered any prejudice with respect to a contemplated or existing litigation.  Plaintiff has not alleged that he suffered an unfavorable outcome in a prior legal claim or otherwise lost a non-frivolous or arguable claim.  Further, Plaintiff's claim centers around his inability to litigate his claims under California state law, which are presumably tort claims.  Plaintiff's tort claims are not the type of litigation protected by the Constitution through an access

to courts claim.  The constitutional right of access to the courts only pertains to direct appeals from the convictions for which they are incarcerated such as habeas petitions or civil rights actions. Accordingly, Plaintiff has failed to state a cognizable claim against Defendant Mims or Defendant John/Jane Doe Jail Commander for interference with Plaintiff's constitutional right of access to the courts.

### 2.   Retaliation Claims

Plaintiff claims that Defendant Mims and John/Jane Doe Jail Commander implemented the law library policy at FCJ for the purpose of retaliating against inmates who file civil rights claims.

In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "[A] viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Plaintiff's conclusions are not supported by any facts.  Plaintiff fails to allege any facts regarding the FCJ law library policy implemented by Mims and John/Jane Doe Jail Commander. There are no facts in Plaintiff's complaint that plausibly support the conclusion that the unidentified policy was implemented with retaliatory intent.  Plaintiff fails to state any retaliation claims based on his denied access to the law library.

### B.   Denial of a Common Over-the-Counter (OTC) Remedy

### 1.   Retaliation Claims

Plaintiff claims that his right to free speech was violated because the denial of his requests for laxatives was retaliatory.  Plaintiff's allegations do not support a retaliation claim.  See discussion supra Part III.A.2 (setting forth legal standards for retaliation claims).  Nothing in Plaintiff's

///

complaint suggests that the denial of Plaintiff's medical requests was done with retaliatory motive. Plaintiff fails to state any retaliation claims based on the denial of his requests for laxatives.

### 2. Eighth Amendment/Fourteenth Amendment Claims

Plaintiff claims that his Eighth Amendment rights were violated when he was unable to receive over-the-counter medication for his digestive problems.  It is unclear whether Plaintiff's claims should be characterized as Eighth Amendment claims or Fourteenth Amendment claims. Plaintiff alleges that he was held in FCJ as a pre-trial detainee.  The Eighth Amendment does not apply to pre-trial detainees because pre-trial detainees are not detained for punitive purposes. See Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004).  However, the distinction is largely semantic. If the conditions of Plaintiff's confinement would violate a prisoner's Eighth Amendment rights, they would violate a pre-trial detainee's Fourteenth Amendment rights.  Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) (where a civil detainee is held in conditions similar to or more restrictive than the conditions imposed on a criminal detainee, the conditions constitute "punishment" in violation of the detainees Fourteenth Amendment rights).

While it is unclear whether Plaintiff was held as a pre-trial detainee at FCJ for the entire time span described in Plaintiff's complaint and whether Plaintiff's claims should be characterized as Eighth Amendment or Fourteenth Amendment claims, the same "deliberate indifference" legal standard applies regardless of Plaintiff's incarceration status.  Cloutheir v. County of Contra Costa, 591 F.3d 1232, 1241-44 (9th Cir. 2010) (deliberate indifference standard applies to claims that government officials failed to prevent harm).  For the purposes of screening Plaintiff's claims, the Court will use the use the Eighth Amendment standards.

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)).  A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

"[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle, 429 U.S. at 105. In order to state an Eighth Amendment claim based on deficient medical treatment, a plaintiff must show: (1) a serious medical need; and (2) a deliberately indifferent response by the defendant. Conn v. City of Reno, 572 F.3d 1047, 1055 (9th Cir. 2009) (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). A serious medical need is shown by alleging that the failure to treat the plaintiff's condition could result in further significant injury, or the unnecessary and wanton infliction of pain. Id. A deliberately indifferent response by the defendant is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. Id. In order to constitute deliberate indifference, there must be an objective risk of harm and the defendant must have subjective awareness of that harm. Id.

Plaintiff claims that Defendant Laird was aware of Plaintiff's medical needs because Plaintiff filed numerous administrative grievances requesting treatment. Defendant Laird dismissed Plaintiff's grievances because he dismissed Plaintiff's medical problems as "mere constipation." Plaintiff claims that his need for medical treatment should have been obvious, even to a lay person. Plaintiff also claims that his need for medical attention was serious because he was suffering substantial discomfort from his digestive problems. Based on the facts alleged, the Court finds that Plaintiff states a plausible claim against Defendant Laird for acting with deliberate indifference toward Plaintiff's serious medical needs.

Plaintiff attempts to hold Defendants Mims and John/Jane Doe Jail Commander liable for implementing a policy concerning over-the-counter medications that was deliberately indifferent toward Plaintiff's serious medical needs.  Plaintiff fails to support his claim against Mims and John/Jane Doe Jail Commander with sufficient factual allegations to plausibly draw the conclusion that they acted with deliberate indifference.  Plaintiff does not provide a clear explanation of how the policy was deficient or how it was deliberately indifferent toward Plaintiff's medical needs.  Plaintiff only alleges that the commissary did not have laxatives in stock and the FCJ policy failed to ensure that the commissary kept laxatives in stock.  Those facts do not support the conclusion that the policy was unconstitutional.  There are no facts in Plaintiff's complaint that plausibly support the conclusion that either Mims or John/Jane Doe Jail Commander was aware of a serious risk to inmate health because of the risk that the commissary would not have laxatives in stock.  Plaintiff fails to state any claims against Mims or John/Jane Doe Jail Commander based on the FCJ policy for over-the-counter medications sold in the commissary.

### C.    Correctional Officer Harassment/Retaliation

#### 1.    Retaliation Claims

Plaintiff claims that Defendants Cartier, Osborne, Cunha, and Blathers retaliated against Plaintiff for filing administrative grievances.  Plaintiff's allegations are sufficient to state claims for retaliation against Defendants Cartier, Osborne, and Cunha.  See discussion supra Part III.A.2 (setting forth legal standards for retaliation claims).

Plaintiff claims that Cartier, Osborne, and Cunha followed a pattern and practice of denying, delaying, or ignoring Plaintiff's administrative grievances.  Plaintiff claims that the officers did not take the grievance process seriously and repeatedly rejected Plaintiff's grievances for frivolous reasons.  Plaintiff alleges that Defendants would often "have words" with Plaintiff regarding his grievances and would give Plaintiff dirty looks as he left his cell.  Plaintiff's allegations demonstrate that Cartier, Osborne, and Cunha were frustrated with Plaintiff's repeated grievances and their actions had a chilling effect on Plaintiff's exercise of his First Amendment rights due to the futility in filing grievances.  On one occasion, Plaintiff claims that Cunha and Osborne deliberately attempted to set up Plaintiff to be assaulted by his cell mate by labeling Plaintiff as a snitch.  Plaintiff

alleges that their actions were in response to a grievance filed by Plaintiff to notify officials that he feared for his life. Plaintiff also alleges that Cartier ordered Osborne and Cunha to trash Plaintiff's cell on another occasion. Plaintiff states cognizable claims against Defendants Cartier, Osborne, and Cunha for retaliation based on the events described in his "Correctional Officer Harassment/Retaliation" claim.

However, Plaintiff's only allegation against Defendant Blathers is that Blathers "had a duty to supervise and correct her staff" and ignored Plaintiff's requests to talk to her about the misconduct of her staff. Nothing in Plaintiff's complaint suggests that Blathers ignored Plaintiff's letters with retaliatory intent and Blathers is not liable for the actions of her subordinates under a respondeat superior theory of liability. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff fails to state a claim against Defendant Blathers for retaliation based on the events described in his "Correctional Officer Harassment/Retaliation" claim.

### 2. **Eighth Amendment Claims**

Plaintiff claims that Defendants violated Plaintiff's Eighth Amendment rights. Plaintiff alleges that Defendants Osborne and Cunha deliberately attempted to induce Plaintiff's cellmate to attack Plaintiff by labeling Plaintiff as a snitch. Plaintiff's factual allegations are sufficient to support an Eighth Amendment claim against Osborne and Cunha for deliberate indifference to a serious risk to Plaintiff's safety.

Plaintiff's Eighth Amendment claim against Defendants Cartier or Blathers is unclear. Plaintiff has not alleged that either Cartier or Blathers deliberately exposed Plaintiff to a serious risk to his health or safety. Plaintiff only alleges that Cartier delayed, ignored, or denied Plaintiff's

grievances, and Plaintiff does not allege that any of the grievances processed by Cartier concerned any imminent threat to Plaintiff's well-being. Plaintiff only alleges that Blathers failed to supervise his subordinates. Plaintiff's vague allegations are not sufficient to plausibly support the conclusion that Cartier or Blathers were aware of a serious risk to Plaintiff's health or safety and deliberately ignored it. Plaintiff fails to state any Eighth Amendment claim against Cartier or Blathers based on the events described in his "Correctional Officer Harassment/Retaliation" claim.

### 3. Due Process Claims

Plaintiff claims that the harassment and retaliation that Plaintiff received for filing grievances violated Plaintiff's due process rights.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In determining whether a hardship is sufficiently significant enough to warrant due process protection, the Court looks to: (1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody and is thus within the prison's discretionary authority to impose, (2) the duration of the condition and the degree of restraint imposed, and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003).

Inmates have no liberty interest in the processing of an inmate appeal because inmates lack a separate constitutional entitlement to a specific prison grievance procedure. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). The failure to timely process inmate appeals pursuant to state prison regulations is not an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Nor did the delay, denial, or screening-out of Plaintiff's inmate appeals, even if erroneous, result in an "atypical

1  and significant hardship."  Plaintiff has no protected liberty interest in the vindication of his

2  administrative claims.     Accordingly, Plaintiff has failed to state a due process claim against

3  Defendants Cartier, Osborne, Cunha, or Blathers for denying, ignoring, or refusing to respond to

4  Plaintiff's administrative grievances.

5                    **4.**    **Equal Protection Claims**

6            Plaintiff also attempts to raise an equal protection claim under the Fourteenth Amendment.

7  The Equal Protection Clause requires that persons who are similarly situated be treated alike. City

8  of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). A plaintiff may establish an

9  equal protection claim by showing that the plaintiff was intentionally discriminated against on the

10  basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250

11  F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the

12  defendants' actions were a result of the plaintiff's membership in a suspect class, such as race.

13  Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir.2005).  If the action in question does

14  not involve a suspect classification, a plaintiff may establish an equal protection claim by showing

15  that similarly situated individuals were intentionally treated differently without a rational relationship

16  to a legitimate state purpose.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San

17  Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v.

18  Goldberg, 375 F.3d 936, 944 (9th Cir.2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d

19  662, 679 (9th Cir.2002).  To state an equal protection claim under this theory, a plaintiff must allege

20  that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated

21  differently from others similarly situated; and (3) there is no rational basis for the difference in

22  treatment.  Village of Willowbrook, 528 U.S. at 564.

23            Plaintiff has not alleged that he was intentionally discriminated against.  Plaintiff does not

24  allege that he was a member of any identifiable class and  that he was intentionally treated differently

25  from other similarly situated people because of his membership in any identifiable class.  Plaintiff

26  fails to state any cognizable equal protection claims based on the events described in his

27  "Correctional Officer Harassment/Retaliation" claim.

28  ///

1

### D.   Retaliatory Abuse of the Disciplinary Process

2

#### 1.   Retaliation Claims

3   Plaintiff claims that Defendants Blathers, Cartier, Cunha, and Osborne retaliated against

4   Plaintiff while Plaintiff was away in Court by trashing Plaintiff's cell and transferring Plaintiff to the

5   coldest floor in FCJ.   Plaintiff claims that Blathers, Cartier, Cunha, and Osborne believed that

6   Plaintiff was going to Court to complain about their actions.   Plaintiff states cognizable claims

7   against Blathers, Cartier, Cunha, and Osborne for retaliating against Plaintiff's exercise of his First

8   Amendment rights.   See discussion supra Part III.A.2 (setting forth legal standards for retaliation

9   claims).

10

#### 2.   Due Process Claims

11   Plaintiff claims that Defendant Nichols violated Plaintiff's due process rights by failing to

12   provide Plaintiff with written notice of the findings of Plaintiff's disciplinary hearing for a minor

13   offense.   Plaintiff fails to state a cognizable due process claim against Defendant Nichols.   See

14   discussion supra Part III.C.3 (setting forth legal standards for due process claims).   Plaintiff has not

15   alleged that he was deprived of any constitutionally protected liberty interest.   Plaintiff admits that

16   the offense was minor and that Nichols did not impose any disciplinary housing time because

17   Plaintiff was already in lockdown by himself.   Plaintiff is not entitled to the procedural protections

18   of the due process clause if there are no protected liberty interests at stake at the disciplinary hearing.

19   In other words, because the hearing and the punishment were not substantial, Plaintiff is not entitled

20   to written copies of the findings and punishment for his offense.   Plaintiff fails to state a cognizable

21   claim against Defendant Nichols for violating Plaintiff's due process rights.

22

#### 3.   Equal Protection Claims

23   Plaintiff claims that his equal protection rights were violated.   However, Plaintiff does not

24   allege that he was a member of any identifiable class and does not allege that he was discriminated

25   against.   See discussion supra Part III.C.4 (setting forth legal standards for equal protection claims).

26   Plaintiff fails to state any cognizable equal protection claims based on the events described in his

27   "Retaliatory Abuse of the Disciplinary Process" claim.

28   ///

### 4.     Eighth Amendment Claims

Plaintiff claims that Defendants violated his Eighth Amendment rights.  However, the injuries described in Plaintiff's "Retaliatory Abuse of the Disciplinary Process" claim do not touch upon the rights protected by the Eighth Amendment.  Plaintiff does not allege that he was deprived of "the minimal civilized measure of life's necessities."  See discussion supra Part III.B.2 (setting forth legal standards for Eighth Amendment claims).  Plaintiff fails to state any cognizable Eighth Amendment claims based on the events  described in his "Retaliatory Abuse of the Disciplinary Process" claim.

### E.     "Mis-Classification"

#### 1.     Retaliation Claims

Plaintiff alleges that Defendants Shumate and Oliver retaliated against Plaintiff for filing grievances.  Plaintiff alleges that Shumate transferred Plaintiff to different cells in the jail to force Plaintiff to use stairs, knowing that it caused Plaintiff pain due to his knee problems.  Plaintiff alleges that Shumate and Oliver also deliberately housed Plaintiff with violent inmates to instigate violence.  Plaintiff states cognizable claims for retaliation against Defendants Shumate and Oliver. See discussion supra Part III.A.2 (setting forth legal standards for retaliation claims).

#### 2.     Eighth Amendment Claims

Plaintiff alleges that Defendants Shumate and Oliver violated Plaintiff's rights under the Eighth Amendment.  Plaintiff contends that Shumate and Oliver deliberately housed Plaintiff with violent inmates in an attempt to instigate violence between the two, and Plaintiff contends that Shumate deliberately housed Plaintiff in areas of the prison that forced him to use stairs, knowing that Plaintiff's knee problems caused pain when Plaintiff used stairs.  Plaintiff states cognizable claims against Defendants Shumate and Oliver for violating Plaintiff's Eighth Amendment rights. See discussion supra Part III.B.2 (setting forth legal standards for Eighth Amendment claims).

#### 3.     Due Process Claims

Plaintiff alleges that Defendants Shumate and Oliver violated Plaintiff's due process rights by denying Plaintiff's requests for a classification hearing.  See discussion supra Part III.C.3 (setting forth legal standards for due process claims).  Plaintiff does not have a protected liberty interest in

a particular classification. <u>Hernandez v. Johnston</u>, 833 F.2d 1316, 1318 (9th Cir. 1987). Accordingly, the Constitution does not afford Plaintiff any procedural protections with respect to his classification status.  In other words, the U.S. Constitution is not violated when Plaintiff does not receive a classification hearing to determine his classification status.  To the extent that Plaintiff's classification status resulted in a threat to Plaintiff's safety, Plaintiff's interests are protected by the Eighth Amendment, not the Fourteenth Amendment.  <u>See</u> discussion <u>supra</u> Part III.E.2.  Plaintiff fails to state any cognizable due process claims based on the denial of his requests for a classification hearing.

### 4.   Equal Protection Claims

Plaintiff claims that his equal protection rights were violated.  However, Plaintiff does not allege that he was a member of any identifiable class and that he was discriminated against.  <u>See</u> discussion <u>supra</u> Part III.C.4 (setting forth legal standards for equal protection claims).  Plaintiff fails to state any cognizable equal protection claims based on the events described in his "Mis-Classification" claim.

### F.   Unconstitutionally Cold Jail Temperatures

#### 1.   Retaliation Claims

Plaintiff claims that Defendant Blathers conspired with others to "retaliatorily[sic] abuse the FCJ disciplinary process and cause the Plaintiff to suffer even greater arthritis misery and cold numbness in his feet. . . ."  (Am. Compl. 79, ECF No. 25.)  Plaintiff contends that Blathers caused Plaintiff harm by "retaliatorily[sic] manipulating the FCJ Disciplinary Procedure and placing Plaintiff in 40° housing for a month."  (Am. Compl. 79, ECF No. 25.)

Plaintiff fails to provide any allegations that clearly explain how Blathers "manipulated" the "FCJ Disciplinary Procedure."  Further, Plaintiff fails to set forth any allegations to support his conclusion that Blathers acted with retaliatory intent.  There is nothing in Plaintiff's complaint that supports the conclusion that Plaintiff was deliberately exposed to cold temperature by Blathers in retaliation for Plaintiff's administrative grievances.  Finally, Plaintiff fails to set forth any factual allegations that support his conclusion that Blathers entered into a conspiracy with other prison officials.  Plaintiff cannot proceed against Blathers on a legal claim based on vague conclusions.

Plaintiff fails to state a retaliation claim against Blathers based on the events described in his "Unconstitutionally Cold Jail Temperatures" claim.

### 2.    Eighth Amendment Claims

Plaintiff claims that he was exposed to cold temperatures at FCJ in violation of his rights under the Eighth Amendment. See discussion supra Part III.B.2 (setting forth legal standards for Eighth Amendment claims).

Plaintiff alleges that he requested extra clothing or blankets because the temperatures were too cold and Defendant John/Jane Doe Jail Commander denied those requests. Thus, Plaintiff has alleged sufficient facts to support the conclusion that John/Jane Doe Jail Commander was aware of an excessive risk to Plaintiff's health and responded in a deliberately indifferent manner. Plaintiff states a cognizable claim against Defendant John/Jane Doe Jail Commander for the violation of Plaintiff's Eighth Amendment rights.

Plaintiff alleges that Defendants Dawson and Calvert violated Plaintiff's Eighth Amendment rights by recording an inaccurate temperature reading in the jail. Plaintiff alleges that Dawson and Calvert responded to Plaintiff's administrative grievance about the cold temperatures and were aware of many other grievances from other inmates complaining about the same issue. Plaintiff further alleges that Dawson and Calvert attempted to cover up the issue by recording an inaccurate temperature reading. Plaintiff claims that Dawson and Calvert recorded the temperature at the warmest area in the jail--under a window that was receiving direct sunlight. Plaintiff claims that Dawson and Calvert were aware that their reading was inaccurate and was aware that the jail was too cold because they were wearing coats. When Plaintiff asked Dawson and Calvert to record the temperature inside Plaintiff's cell, Dawson and Calvert ignored Plaintiff and walked away. Plaintiff has alleged sufficient facts to support the conclusion that Dawson and Calvert were aware of an excessive risk to Plaintiff's health and deliberately disregarded that risk by attempting to cover-up the situation with an inaccurate temperature reading. Plaintiff states a cognizable claim against Defendants Dawson and Calvert for violating Plaintiff's Eighth Amendment rights.

Plaintiff alleges that Defendant Blathers and Mims were deliberately indifferent toward the risk to Plaintiff's health caused by the cold temperatures. However, Plaintiff has alleged no facts that

support the conclusion that Blathers or Mims were personally aware of any excessive risk to Plaintiff's health. Plaintiff has not alleged that either Blathers or Mims were personally aware of the conditions in the specific area of the jail where Plaintiff was housed. Further, Plaintiff fails to identify any specific action by either Blathers or Mims that could be characterized as deliberately indifferent. Plaintiff only vaguely alleges that Blathers manipulated the FCJ disciplinary procedure and thereby placed Plaintiff in cold housing for a month. Plaintiff also vaguely alleges that Mims had no policy in place for inmates to get extra clothing. Plaintiff has not alleged any facts that suggest Mims was aware that there was an issue requiring the need for a policy regarding extra clothing. Plaintiff does not allege that he personally informed Mims about any health risks associated with the cold temperatures. Accordingly, Plaintiff fails to state any cognizable Eighth Amendment claims against Mims or Blathers based on the events described in his "Unconstitutionally Cold Jail Temperatures" claim.

### 3.    18 U.S.C. § 241 Claims

Plaintiff claims that Defendants Blathers, Dawson, and Calvert are liable under 18 U.S.C. § 241 for entering into a conspiracy to expose Plaintiff to cold jail temperatures. Section 241 is a criminal statute. Plaintiff has no private cause of action to enforce Section 241. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In other words, Plaintiff cannot sue Defendants in a civil lawsuit for violating Section 241.

### G.    Denial of Adequate Lighting

Plaintiff claims that the inadequate lighting in his cell violated his rights under the Eighth Amendment. However, Plaintiff's allegations regarding the lighting in his cell fail to meet the objective, "sufficiently serious" standard for deprivations under the Eighth Amendment and Plaintiff fails to allege facts that support the conclusion that Mims, John/Jane Doe Jail Commander, or the unknown maintenance supervisor acted with deliberate indifference. See discussion supra Part III.B.2 (setting forth legal standards for Eighth Amendment claims).

"Adequate lighting is one of the fundamental attributes of 'adequate shelter' required by the Eighth Amendment." Hoptowit v. Spellman, 753 F.2d 779, 783 (9th Cir. 1985). In Hoptowit, the Ninth Circuit upheld the district court's finding of unconstitutional lighting conditions "based upon

evidence that the lighting was so poor that it was inadequate for reading and caused eyestrain and fatigue and hindered attempts to insure that basic sanitation was maintained." Id. Plaintiff vaguely alleges that the light was so dim that Plaintiff "did have problems seeing during cell cleanup." (AM. Compl. 82, ECF No. 25.) Nothing in Plaintiff's complaint suggests that it was so dark that his health was at risk from his inability to maintain basic sanitation. Further, Plaintiff does not allege that the light was so inadequate that he could not read. Plaintiff admits that the light was strong enough to read while sitting at the desk in his cell. Plaintiff complains that he got into fights with his cellmate over the use of the desk. Plaintiff also centers his claims upon the allegation that there was not enough light to permit Plaintiff to read comfortably while seated or lying down on his bunk. The Court is unaware of any precedent that suggests that the relevant legal standard for constitutional lighting conditions is whether an inmate can read from the comfort of his or her bunk.

Further, Plaintiff fails to allege facts that support the conclusion that any prison official acted with deliberate indifference. Plaintiff attempts to hold Defendant Mims and John/Jane Doe Jail Commander liable for the inadequate lighting, but does not allege that Mims or John/Jane Doe Jail Commander was aware that the light in Plaintiff's cell was dim. Plaintiff does allege that the unknown maintenance supervisor was aware of the lighting conditions because Plaintiff sent administrative grievances to the maintenance supervisor. However, Plaintiff also alleges that the maintenance supervisor sent workers to try to fix the light on multiple occasions. It took 46 days to fix the light but Plaintiff fails to allege any facts that suggest that they delay was caused by the maintenance supervisor. Plaintiff fails to explain how the maintenance supervisor's deliberate indifference caused Plaintiff to suffer from inadequate lighting. Plaintiff fails to state any claims based on the events described in his "Denial of Adequate Lighting" claim.

### H.   No Leave to Amend

The Court must give a pro se litigant leave to amend their complaint if it appears that the deficiencies in their claims can be cured by further amendment. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2007) (recognizing longstanding rule that leave to amend should be granted even if no request to amend was made unless the court determines that the pleading could not possibly be cured by the allegation of other facts); Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir.

1992)(dismissal with prejudice upheld where court had instructed plaintiff regarding deficiencies in prior order dismissing claim with leave to amend); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment).  However, the Court has already provided Plaintiff with an opportunity to amend his complaint and provided Plaintiff with the relevant legal standards with which to amend his complaint.  Further, the Court informed Plaintiff of the specific deficiencies in many of his claims.  Accordingly, the Court finds that the deficiencies in Plaintiff's claims cannot be cured by further amendment and the Court will recommend that they be dismissed without leave to amend for failing to state a claim.

## I.    Improperly Joined Claims

Plaintiff's first amended complaint states cognizable claims against multiple groups of defendants for various transactions and occurrences.  Thus, the Court will address the issue of whether Plaintiff's claims are properly joined in a single lawsuit.

Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant.  Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action."  However, unrelated claims that involve different defendants must be brought in separate lawsuits.  See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).  This rule is not only intended to avoid confusion that arises out of bloated lawsuits, but also to ensure that prisoners pay the required filing fees for their lawsuits and prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act.[4]  28 U.S.C. § 1915(g).

Plaintiff's "Denial of a Common Over-the-Counter (OTC) Remedy" claim states a cognizable claim against Defendant Laird for deliberate indifference toward Plaintiff's medical needs by ignoring and denying Plaintiff's requests for medical treatment for his digestive problems.

///

---

[4]The Prison Litigation Reform Act allows prisoners to file complaints without prepayment of the filing fee unless they have previously filed three frivolous suits as a prisoner.  28 U.S.C. §1915(a),(g).

Plaintiff's "Correctional Officer Harassment/Retaliation" claim states cognizable claims against Defendants Cartier, Osborne, and Cunha for retaliating against Plaintiff's exercise of his protected right to file grievances against the government.  Plaintiff also states cognizable claims against Osborne and Cunha for deliberate indifference to a risk to Plaintiff's safety in violation of Plaintiff's Eighth Amendment rights.

Plaintiff's "Retaliatory Abuse of the Disciplinary Process" claim states cognizable claims against Defendants Blathers, Cartier, Cunha, and Osborne for retaliation.

Plaintiff's "Mis-classification" claim states cognizable claims against Defendants Shumate and Oliver for retaliation and for the violation of Plaintiff's rights under the Eighth Amendment.

Plaintiff's "Unconstitutionally Cold Jail Temperatures" claim states cognizable claims against Defendants Dawson, Calvert, and John/Jane Doe Jail Commander for deliberate indifference to an excessive risk to Plaintiff's health, in violation of the Eighth Amendment.

The cognizable claims stated in Plaintiff's first amended complaint are not properly joined.  Plaintiff's claim against Defendant Laird did not arise from the same transaction, occurrence, or series of transactions as any of Plaintiff's other claims.  Although Plaintiff's "Correctional/Officer Harassment/Retaliation" claim and his "Retaliatory Abuse of the Disciplinary Process" claim could be joined in a single lawsuit under Rule 18 because they involve the same group of Defendants, those two sets of claims cannot be joined with any other claims.  Similarly, Plaintiff's "Mis-classification" claim and Plaintiff's "Unconstitutionally Cold Jail Temperatures" claim must be raised in separate lawsuits.  In all, Plaintiff has raised four separate sets of claims that must be raised in four separate lawsuits because the Federal Rules of Civil Procedure do not permit the claims to be joined in a single lawsuit.

Accordingly, the Court will recommend that Plaintiff's claims be severed.  The Court will recommend that this action proceed on the first cognizable claim presented in Plaintiff's first amended complaint: Plaintiff's claim against Defendant Laird for deliberate indifference toward Plaintiff's medical needs.  The Court will recommend that three separate additional actions be opened for:

1.    Plaintiff's claims against Defendants Cartier, Osborne, and Cunha for the events

described in Plaintiff's "Correctional Officer Harassment/Retaliation" claim and against Defendants Blathers, Cartier, Osborne, and Cunha for the events described in Plaintiff's "Retaliatory Abuse of the Disciplinary Process" claim;

2.     Plaintiff's claims against Defendants Shumate and Oliver for the events described in Plaintiff's "Mis-classification" claim; and

3.     Plaintiff's claims against Defendants Dawson, Calvert, and John/Jane Doe Jail Commander for the events described in Plaintiff's "Unconstitutionally Cold Jail Temperatures" claim.

The Court will recommend that all the other claims in Plaintiff's first amended complaint be dismissed without leave to amend.

**IV.     Conclusion and Recommendation**

Plaintiff's complaint states some cognizable claims.  Plaintiff states a cognizable claim against Defendant Laird for deliberate indifference toward Plaintiff's medical needs.  Plaintiff states cognizable claims against Defendants Cartier, Osborne, and Cunha for retaliation.  Plaintiff states cognizable claims against Osborne and Cunha for deliberate indifference to a risk to Plaintiff's safety.  Plaintiff states cognizable claims against Defendants Blathers, Cartier, Cunha, and Osborne for retaliation.  Plaintiff states cognizable claims against Defendants Shumate and Oliver for retaliation and for the violation of Plaintiff's rights under the Eighth Amendment.  Finally, Plaintiff states cognizable claims against Defendants Dawson, Calvert, and John/Jane Doe Jail Commander for deliberate indifference to an excessive risk to Plaintiff's health.

However, the Court finds that Plaintiff's cognizable claims are improperly joined and cannot be litigated in a single lawsuit.  The Court will recommend that Plaintiff's claims be severed and this action proceed on Plaintiff's claim against Defendant Laird.  The Court will recommend that three separate actions be opened for Plaintiff's claims against Defendants Blathers, Cartier Cunha, and Osborne; Plaintiff's claims against Defendants Shumate and Oliver; and Plaintiff's claims against Defendants Dawson, Calvert, and John/Jane Doe Jail Commander.

The remaining claims in Plaintiff's first amended complaint fail to state a claim.  Plaintiff was provided with the opportunity to amend and his first amended complaint failed to remedy the

deficiencies with these claims.  The Court will recommend that these claims be dismissed without leave to amend.  Accordingly, it is HEREBY RECOMMENDED that:

1.  This action proceed on Plaintiff's first amended complaint, filed on January 19, 2010, against Defendant Laird for deliberate indifference toward Plaintiff's medical needs in violation of the Eighth Amendment;

2.  The remaining cognizable claims in Plaintiff's first amended complaint be severed, and separate actions be opened for:

    a.  Plaintiff's claims against Defendants Blathers, Cartier, Cunha, and Osborne;

    b.  Plaintiff's claims against Defendants Shumate and Oliver;

    c.  Plaintiff's claims against Defendants Dawson, Calvert, and John/Jane Doe Jail Commander; and

3.  Plaintiff's remaining claims be dismissed for failure to state a claim, without leave to amend.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    October 14, 2010              /s/ Sheila K. Oberto
                                     UNITED STATES MAGISTRATE JUDGE