# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL EUGENE HOLLIS, | CASE NO. 1:09-cv-00463-AWI-BAM PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES |
| v. | |
| RUSSELL YORK, et al., | |
| Defendants. | (ECF Nos. 70, 74, 77) |
| | OBJECTIONS DUE WITHIN THIRTY DAYS |

**Findings and Recommendations on Defendants' Motion to Dismiss**

**I.     Procedural History**

Plaintiff Michael Eugene Hollis ("Plaintiff") is a federal prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.[1] This action is proceeding on the third amended complaint, filed September 26, 2011, against Defendants Dawson and Calvert for deliberate indifference to conditions of confinement in violation of the Eighth Amendment. (ECF NO. 67.) On June 29, 2012, Defendants filed a motion to dismiss for failure to exhaust administrative remedies. (ECF No. 70.)

In light of the decision in <u>Woods v. Carey</u>, 684 F.3d 934, 939 (9th Cir. 2012), Plaintiff was provided with notice of the requirements for opposing a motion to dismiss for failure to exhaust on July 24, 2012, and granted thirty days in which to file an opposition to the motion to dismiss. (ECF

---

[1] Although Plaintiff is a federal prisoner, the incidents alleged in the complaint occurred while he was housed at the Fresno County Jail.

1

Nos. 72, 73.) On July 30, 2012, Plaintiff filed an opposition to the motion to dismiss, motion for summary judgment, affidavit, and statement of timely response. (ECF Nos. 74, 75, 77, 78.) Defendants filed an opposition to Plaintiff's motion for summary judgment on August 15, 2012. (ECF No. 79.)

## II.     Motion to Dismiss

### A.     Legal Standard

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA applies to pretrial detainees. 42 U.S.C. § 1997e(h). The section 1997e(a) exhaustion requirement applies to all prisoner suits relating to prison conditions. Woodford v. Ngo, 548 U.S. 81, 85 (2006). All available remedies must be exhausted, not just those remedies that meet federal standards, Woodford, 548 U.S. at 84, nor must they be "plain, speedy, and effective," Booth v. Churner, 532 U.S. 731, 739 (2001). Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated. Id at 741; see Woodford, 548 U.S. at 93.

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense which defendants have the burden of raising and proving the absence of exhaustion. Lira v. Herrera, 427 F.3d 1164, 1171 (9th Cir. 2005). The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)). "In deciding a motion to dismiss for failure to exhaust, a court may look beyond the pleadings and decide disputed issues of fact." Sapp v. Kimbrell, 623 F.3d. 813, 821 (9th Cir. 2010) (quoting Wyatt, 315 F.3d at 1119-20). If the court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice, even where there has been exhaustion while the suit is pending. Lira, 427 F.3d at 1171.

B.     **Relevant Allegations in Third Amended Complaint**

Plaintiff was housed at the Fresno County Jail ("FCJ") from August 18, 2008, until June 16, 2009. (Third Am. Compl. 6,[2] ECF No. 50.) Plaintiff alleges that FCJ only issues two pairs of socks and his feet were frozen and numb from the cold. (Id. at 12.) While Plaintiff was housed at FCJ he was subjected to inhumanely cold temperatures and only provided with meager bedding to keep warm. On October 10, 2008, Plaintiff claims that he experienced his first extremely cold night at FCJ and suffered from extremely cold temperatures from October through November 2008. (Id. at 12, 14.) Plaintiff complained of the cold temperatures from October 2008 through March 2009. (Id. at 14.)

Plaintiff filed grievances regarding the cold temperatures on November 23, 2008, and November 29, 2008. On December 2, 2008, Defendants Dawson and Calvert came to take a temperature reading. Plaintiff alleges that the laser was pointed at the skylight on the sunny side of the building and showed a temperature of 64 degrees which did not reflect the true temperature of the cell. Plaintiff alleges that Defendant Dawson told him to "quit his whining" and that it was even colder on the sixth floor. Plaintiff states that he had allowed himself to be talked into working with Defendant Dawson and withdrawing his grievance. (Id. at 15.) Plaintiff was housed on the sixth floor from February 23, 2009, through March 23, 2009, and was subjected to even colder temperatures. (Id. at 15-16.)

C.     **Defendants' Position**

Defendants contend that during the time Plaintiff was confined at FCJ he filed over 40 inmate grievances, and withdrew 13 of the grievances he submitted. Of all the grievances filed, only two relate to the temperatures in his cell. The first grievance, filed November 23, 2008, was investigated by Defendant Calvert on December 2, 2008, and was withdrawn by Plaintiff. The second grievance was not sustained because Plaintiff directed it to the wrong department. (Memo. of Points and Authorities in Support of Motion to Dismiss for Failure to Exhaust Administrative Remedies 4, ECF

---

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

No. 70-1.)

Defendant Calvert claims that, after the temperature readings were taken in the cell, Plaintiff was shown the readings and informed they were within the required temperature range and asked Plaintiff if he would be willing to withdraw his grievance. Defendant Calvert did not promise anything in return for Plaintiff withdrawing the grievance, but did inform Plaintiff that he would let maintenance know about the temperature readings received. (Id. at 5.) Defendants contend that since Plaintiff voluntarily withdrew his grievance, he failed to exhaust his administrative remedies. (Id. at 6.)

### D. Plaintiff's Position[3]

Plaintiff alleges that he exhausted his administrative remedies by filing three grievances, one which was refused. (Objection to Defense Motion to Dismiss 1, ECF No. 74.) In his affidavit, Plaintiff claims that he filed four grievances regarding the temperatures at the jail, on November 23, 2008; November 25, 2008; and November 29, 2008; and a grievance on February 28, 2009, that was refused. (Affidavit 1, ECF No. 77.)

Plaintiff was aware of the grievance process and filed two grievances the second day that he was housed at FCJ. (Id. at 5.) Plaintiff alleges that he was denied grievance forms on three occasions. (ECF No. 74 at 2.) The first denial occurred from September 5 to 7, 2008, when he needed to file a grievance regarding an earache. (ECF No. 77 at 1-2.) The second time he was denied a grievance was from February 24 to 27, 2009 when he was starving and suffering from hypoglycemia in the cold temperatures. On February 28, 2009, after four days of trying to get a grievance form, Plaintiff's grievance was refused. The third incident was from March 9 to 15, 2009, when Plaintiff had a bad cold and wanted cold medications. (Id. at 2.)

Plaintiff claims that the grievance process at FCJ is flawed and leeway should be given to inmates to file grievances beyond the fourteen days required by the regulations. (ECF No. 74 at 3.) Plaintiff contends that he withdrew his grievance in good faith and did not find out until later that

---

[3] Plaintiff argues the merits of his underlying claim and requests that Defendants be required to take a polygraph examination. The only issue before the Court at this time is whether Plaintiff exhausted his administrative remedies and Plaintiff's arguments as to the merits of this action are disregarded.

4

FCJ officials would try to blame Plaintiff for being harmed.  (Id. at 3-4.)  He would never have signed off on the grievance if he thought that he would not receive relief within a week because he is "a zealot who would never have within [sic] that grievance without good reason." (Id. at 10.)

Plaintiff claims that he sent the grievance to the medical department because he had medical complications related to the cold temperatures in his cell. (Id. at 14-15.)  Of the approximately forty grievances that he filed, only about one fourth of them were treated properly by responsible professionals. (Id. at 6.)  Plaintiff alleges he did everything he could to "fight his way though a thick layer of low-level cheating and oppression to give those officials 'a full and fair opportunity' to address his claims." (Id. at 8.)  Plaintiff requests that the motion to dismiss be denied. (Id. at 16.)

**E.  Discussion**

The issue here is whether Plaintiff has exhausted his administrative remedies in regards to the allegedly cold conditions at the FCJ.  At different times, Plaintiff has stated that he filed two, three, or four grievances regarding these conditions.

The regulations in effect when Plaintiff was housed at FCJ state that inmates are provided with an inmate grievance form by FCJ staff and the grievance must be filed within fourteen days of the incident being grieved.[4]  (Inmate Grievance Policies and Procedures 4, ECF No. 70-4.)  The grievance is to be investigated and processed for review within a reasonable amount of time, usually fourteen calendar days from submission. (Id. at 5.)  Three levels of review are required by the grievance procedure.  The employee is to make a recommendation to sustain or not sustain the inmate's grievance.  If the grievance is sustained, any action taken to resolve the grievance is to be indicated, and if it is not sustained an explanation is to be indicated.  The form is then reviewed by the Watch Commander or Unit Supervisor who will make a recommendation to sustain or not to sustain the grievance.  The grievance is then be reviewed by the Bureau Commander or his designee who will make the final determination as to whether the grievance is to be sustained. (Id.)

Once the grievance is completed and answered the grievance process is deemed to be exhausted. (Satterfield Dec. ¶ 7, ECF No. 70-3.)  If then inmate withdraws the grievance at any point

---

[4] Defendants have provided two versions of the inmate handbook that were in use during the relevant time period.  The Court has reviewed the grievance procedures set forth, and they are identical in both of the handbooks.

5

within the process, it is considered to be dead and is not deemed to be exhausted as it did not complete the grievance process. (Id. at ¶ 9.) If an inmate directed his grievance to the wrong department, it would not be sustained and he would be informed that he needs to direct his grievance to the correct department. (Id. at ¶ 10.)

### 1.     November 23, 2008 Grievance

The first grievance Plaintiff filed regarding the cold temperatures at FCJ was submitted on November 23, 2008. On December 2, 2008, Plaintiff withdrew this grievance. (Inmate Grievance Form, ECF No. 70-8 at 2.) Plaintiff voluntarily withdrew the grievance because he believed that the issue would be addressed within the week. An inmate is required to pursue the administrative remedy process as long as some action can be taken in response to his grievance. Booth, 532 U.S. at 738-39,121 S. Ct. at 1823-24; Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005). In this instance, no action had been taken to resolve Plaintiff's complaints regarding the temperature in his cell and further action would have been available. Since this grievance was not pursued beyond the initial level of review it does suffice to exhaust Plaintiff's administrative remedies.

### 2.     November 26, 2008 Grievance

Plaintiff contends that he submitted a grievance on November 26, 2008, however he presents no evidence of this grievance. The Court has reviewed the complaints filed by Plaintiff and the documents attached to Plaintiff's pleadings. Plaintiff makes no mention of filing a grievance on November 26, 2008, in his original, first, second, or third amended complaints, and the only document around this time frame is a response from medical services dated November 28, 2008, stating:

> Michael in response to your request for warmer clothes and something to help you sleep. JMS does not provide extra clothes or sleep medications. If you believe your housing unit is to [sic] cold you need to address that concern with custody. If you can't sleep and are having mental health issues you need to submit a medical request to JPS not JMS.

(Sec. Am. Compl. 55, ECF No. 45; Third Am. Compl. 30, ECF No. 50.)

Plaintiff has failed to submit any evidence that an inmate grievance was filed regarding the cold temperatures that he was exposed to in the FCJ on November 26, 2008.

6

### 3. November 29, 2008 Grievance

On November 29, 2008, Plaintiff filed an inmate grievance form grieving that he had been mistreated by the inhumane cold in the jail, complained of medical issues and requested additional clothing, and a heating pad or electric blanket. This appeal was submitted as a medical appeal and was processed through the grievance process and was not sustained at the last level on December 12, 2008. Defendants argue that this appeal was not properly exhausted because Plaintiff was required to file it with Maintenance, not the Medical Department.

The PLRA requires proper exhaustion of administrative remedies which means the inmate must comply with all procedural requirements of the institutions' grievance process. Woodford, 548 U.S. at 93-95, 126 S. Ct. at 2387-88. The purpose of the exhaustion requirement is two-fold. First requiring the inmate to exhaust his administrative remedies allows the institution an opportunity to correct its mistakes before being haled into federal court and discourages disregard for the institutions procedures. Albino v. Baca, __ F.3d __, 2012 WL 4215918, *4 (9th Cir. Sept. 21, 2012). Second, requiring exhaustion promotes efficiency because claims are able to be resolved more quickly and efficiently in proceedings before the institution than they are in federal court. Albino, 2012 WL 4215918, *4.

The policy here does not specifically state that the inmate must submit the grievance to the correct department, however it does list the types of grievances that can be filed by department and the inmate is required to specify the type of grievance that he is submitting on the grievance form. Further, the policy states that medical grievances are limited to issues concerning timely and adequate care, not medications or type of care. (Inmate Grievance Policies and Procedures 7, ECF No. 70-4; Inmate Orientation Handbook 13, ECF No. 70-5 at 5.) Plaintiff's grievance clearly does not grieve timely or adequate medical care.

In the appeal response Plaintiff was advised:

> Inmate's grievance basically states it is to [sic] cold in his current housing unit and he needs more clothes or to be moved back to the OHU. This is now the 5[th] inappropriate grievance this patient has submitted. JMS has not [sic] control over the temperatures in the jail [sic] he will need to discuss this issue with custody. This is not a medical condition for which he needs to be moved back to the OHU.
>
> Grievance not sustained. This is a custody issue and another inappropriate use of the

grievance process.

(Inmate Grievance Review Report 5, ECF No. 70-8.)

A review of the different appeals submitted by Plaintiff demonstrates that he was aware of the appeal process and that the appeal needed to be directed to the department that would address the specific issue grieved. Since the medical department was not able to address the issue Plaintiff was grieving, this appeal did not give the institution a fair opportunity to correct the problem. Woodford, 548 U.S. at 95, 126 S. Ct. at 2388 ("The benefits of exhaustion can only be realized if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."); see Horn v. Wallace, 2009 WL 347776, at *11 (N.D.Fla Feb. 11, 2009) (appeal not exhausted because inmate did not address to appropriate official as designated by jail policy).

Here, Plaintiff was informed that he had incorrectly filed his grievance with medical staff and needed to address his concerns to custody staff. The grievance was not addressed on the merits of Plaintiff's claim that he was being subjected to cold temperatures. The Court finds that Plaintiff failed to properly comply with the grievance procedure when he submitted his custody appeal to the medical department in violation of the regulations and this appeal did not exhaust his administrative remedies.

### 4. February 28, 2009 Grievance

Plaintiff claims that after four days of being denied a grievance form, he submitted a grievance on February 28, 2009, that was rejected. (ECF No. 77 at 1.) Plaintiff claims this was when he was "starving and suffering with hypoglycemia in the unconstitutionally cold jail temperatures." (Id. at 2.) While Plaintiff alleges that he has an evidentiary copy of this grievance form, he failed to produce this form. Further, Plaintiff merely states that a Corporal Gutierrez refused the grievance while Plaintiff was housed in the hole.

The Court is mindful that prison officials obstruction of the grievance process may make administrative remedies unavailable and may excuse exhaustion. Sapp, 623 F.3d. at 822. However,

Plaintiff fails to state what the substance of this grievance was, the remedy that he was seeking, or the department this grievance was directed to. Plaintiff's bare assertion that he attempted to file a grievance that was refused by Corporal Gutierrez months after the conditions of which he is complaining arose is insufficient to show that Plaintiff properly complied with the procedural rules. King v. Tracy, 1:06-cv-00108-AWI-SMS-PC, 2007 WL 1532136, at *2 (E.D.Cal. May 25, 2007).

The Court finds that Plaintiff has failed to carry his burden of proof to set forth evidence that is sufficient to defeat Defendants' motion to dismiss and recommends that Defendants' motion to dismiss for failure to exhaust administrative remedies, filed June 29, 2012, be granted.

### III. Recommendation

For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendants' motion to dismiss, filed on June 29, 2012, be GRANTED. 42 U.S.C. § 1997e(a); Fed. R. Civ. P. 12(b).

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 22, 2012**          /s/ **Barbara A. McAuliffe**
                                         UNITED STATES MAGISTRATE JUDGE